# In the United States Court of Federal Claims

No. 03-2627 C
(Filed: August 3, 2010)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **ENTERGY NUCLEAR FITZPATRICK, LLC,** | \* | Spent Nuclear Fuel case; |
| **ENTERGY NUCLEAR INDIAN POINT 3, LLC,** | \* | motion to strike affirmative |
| **and ENTERGY NUCLEAR OPERATIONS, INC.,** | \* | defense; "unavoidable |
| | \* | delays"; *Northern States* |
| Plaintiffs, | \* | *Power Co. v. U.S. Dep't of* |
| | \* | *Energy*, 128 F.3d 754 (D.C. |
| v. | \* | Cir. 1997); writ of |
| | \* | mandamus; *Nebraska Public* |
| **THE UNITED STATES,** | \* | *Power Dist. v. United States*, |
| | \* | 590 F.3d 1357 (Fed. Cir. |
| Defendant. | \* | 2010); damages v. liability; |
| | \* | waiver; laches |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Alex D. Tomaszczuk*, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, counsel of record for Plaintiffs; of counsel were *Jay E. Silberg*, *Daniel S. Herzfeld*, *Jack Y. Chu*, *Evan D. Wesser*, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C., and *L. Jager Smith, Jr.,* Wise Carter Child & Caraway, P.A., Jackson, MS.

*Scott D. Slater*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Alan J. Lo Re*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.; of counsel were *Jane K. Taylor*, Office of General Counsel, United States Department of Energy, Washington, D.C., *Marian E. Sullivan*, Senior Trial Counsel, *Joseph E. Ashman*, *Joseph D. Keller*, *Michelle R. Milberg*, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

---

## OPINION AND ORDER

---

**DAMICH**, **Judge**

Before the court in this Spent Nuclear Fuel ("SNF") case is the Plaintiffs' motion to strike Defendant's first affirmative defense, pursuant to Rule 12(f) of the Rules of the Court of Federal Claims ("RCFC"). Plaintiffs move the court to strike the defense of "unavoidable delays" because Defendant ("the Government") cannot present such a defense without violating the writ of mandamus issued in *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754 (D.C. Cir. 1997) ("*Northern States I*") and given res judicata effect in this court in *Nebraska Public Power Dist. v. United States*, 590 F.3d 1357 (Fed. Cir. 2010) (*en banc*) ("*Nebraska Public Power*"). For the reasons set forth below, the motion to strike the "unavoidable delays" defense is hereby GRANTED.

I.      **Background**[1]

Plaintiffs Entergy Nuclear FitzPatrick, LLC and Entergy Nuclear Indian Point 3, LLC own commercial nuclear power plants. Entergy Nuclear Fitzpatrick owns the James A. FitzPatrick Nuclear Power Station in Scriba, New York. Am. Compl. ¶ 2. Entergy Nuclear Indian Point 3, LLC owns the Indian Point 3 Nuclear Power Station in the Village of Buchanan, New York. *Id.* Entergy FitzPatrick and Entergy Indian Point 3 purchased these two plants from the original owner, New York Power Authority ("NYPA"), on November 21, 2000. *Id.* Licenses to generate nuclear power were issued to the NYPA for the FitzPatrick station and the Indian Point 3 station in 1974 and 1976, respectively. *Id.*

In 1982, Congress enacted the Nuclear Waste Policy Act ("NWPA"). *See generally* 42 U.S.C. §§ 10101- 10270. The Act authorized the Department of Energy ("DOE") to contract with utilities and other producers of nuclear waste to collect and store their SNF. DOE drafted and issued a contract for use in negotiations with utilities, termed the Standard Contract. 10 C.F.R. § 961.11. The Standard Contract provided that DOE would accept and dispose of commercially-generated SNF no later than January 31, 1998 and that, in return, utilities would pay fees to cover the costs for removal. Am. Compl. ¶ 7. Such fees are paid to the Nuclear Waste Fund. *Id.* The NYPA entered into a Standard Contract with DOE for the removal of SNF from both plants in 1983. *Id.* ¶ 1. After purchase, DOE was notified by letter that the Standard Contract had been assigned to Entergy Nuclear Operations, Inc. as agent for the new plant owners, Entergy Nuclear FitzPatrick and Entergy Nuclear Indian Point 3. *Id.* ¶ 2.

There were significant problems with finding a repository for SNF, and by 1987 the program was more than ten years behind schedule. *Id.* ¶ 14. In 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues stating that as there was no repository or interim storage facility, it would not be able to commence SNF removal until 2010 at the earliest. *Id.* ¶ 15. Utilities have since filed actions for breach of the Standard Contract in this court. On

---

[1] For a more detailed history of the NWPA, the Standard Contract, and SNF cases in the federal courts, see *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337-40 (Fed. Cir. 2000); *Indiana Michigan Power Co. v. U.S. Dep't of Energy*, 88 F.3d 1272, 1273-74 (D.C. Cir. 1996); *Dairyland Power Coop. v. United States*, 90 Fed. Cl. 615, 618-21 (2009).

November 5, 2003, Plaintiffs here filed a complaint seeking damages arising from the breach of the Standard Contract by DOE, from the period of acquisition of the plants to the present. *Id.* ¶ 2.  Like other utilities, Plaintiffs claim that DOE's breach of the contract has forced them to "incur substantial additional costs" in finding alternative storage for their SNF.  *Id.* ¶ 21.

After the complaint was filed in this case, the Government filed a motion to stay pending outcomes in other SNF cases relating to discovery on rate of acceptance and damages issues on January 5, 2004.  The case was stayed on May 12, 2004, and then stayed again on February 4, 2005, pending the outcome of the Federal Circuit appeal in *Indiana Michigan Power Co. v. United States*, No. 98-486C.  This stay continued until September 2008.  Both stays were unopposed.  The case then focused on coordinating a discovery plan, and a joint discovery schedule was filed on October 24, 2008.  On November 6, 2008, Plaintiffs filed for summary judgment on liability for partial breach of contract, which was granted on February 26, 2009. The Government, apparently realizing that it had never formally filed or been given a due date for the answer to the original complaint, filed a motion for leave to file an answer out of time on February 24, 2009.  *See* Def.'s Resp. 11.  This answer contains the two affirmative defenses and counterclaim for offset or recoupment pled by the Government.  As its first affirmative defense, the Government states:

> To the extent that the defense is not barred by the United States Court of Appeals for the District of Columbia Circuit's writ of mandamus in *Northern States Power Co. v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997), the 'unavoidable delays' clause of the standard contract would affect or eliminate the Government's liability for and/or plaintiffs' ability to recover damages for DOE's delay.

Answer, ¶ 37.[2]

---

[2] The "unavoidable delays" clause is part of Article IX of the Standard Contract:

> Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. In the event circumstances beyond the reasonable control of the Purchaser or DOE--such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather--cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

10 C.F.R. § 961.11.

On January 14, 2010, the Plaintiffs filed the present motion to strike the Government's first affirmative defense of "unavoidable delays," pursuant to RCFC 12(f). The Government filed a motion to stay as it was considering petitioning for a writ of certiorari after the Federal Circuit decision in *Nebraska Public Power*, and the issues in that case would be relevant to the motion to strike. Def.'s Mot. to Stay Briefing 4-6, January 26, 2010. Because the Government ultimately did not petition for certiorari, no stay was granted, and the Government filed its response on May 21, 2010. Plaintiffs filed their reply in support on June 7, 2010.

## II.    Standard of Review

RCFC Rule 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" and may do so *sua sponte* or on a motion by a party. "A motion to strike must be directed at a 'pleading.'" *Reunion, Inc. v. United States*, 90 Fed. Cl. 576, 580 (quoting RCFC 12(f)); *see also Tecom, Inc. v. United States*, 86 Fed. Cl. 437, 441 n.2 (2009); *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 180 n.15 (2005). RCFC 7 defines a "pleading" as a complaint, an answer to a complaint, an answer to a counterclaim, a reply to any offset or plea of fraud in an answer, a third-party pleading under RCFC 14, or a reply to an answer ordered by the court. The Government here raised the first affirmative defense that is the subject of this motion in its answer; the Court therefore finds that the motion is properly directed at a pleading.

In general, "[c]ourts view motions to strike with disfavor and rarely grant them." *Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681, 690 (2006) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 394 (3d ed. 2004); 2 James Wm. Moore et al., *Moore's Federal Practice and Procedure* § 12.37[1], at 12-99 (3d ed. 2004)).[3] "If sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted." *System Fuels, Inc. v. United States*, 73 Fed. Cl. 206, 216 (2006) (internal quotation omitted); *see also Augustus v. Bd. of Pub. Instruction of Escambia Co., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *Sweeney v. Am. Registry of Pathology*, 287 F. Supp. 2d 1, 5 (D.D.C. 2003); *Solvent Chemical Co. v. E.I. DuPont de Nemours & Co.*, 242 F. Supp. 2d 196, 212 (W.D.N.Y. 2002); *Sec. Exch. Comm'n v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). When considering a motion to strike a defense, the court must "construe the pleadings liberally to give the defendant a full opportunity to support its claims at trial." *New York v. Almy Bros., Inc.*, 971 F. Supp. 69, 72 (N.D.N.Y. 1997); *see also Solvent Chem. Co.*, 242 F. Supp. 2d at 212.

---

[3] RCFC 12(f) is modeled after Federal Rule of Civil Procedure 12(f), and interpretation of that rule guides the Court's analysis of the proper standard of review. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims 1 ("interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure").

### III.   Discussion

Plaintiffs move that the court strike the "unavoidable delays" affirmative defense because the assertion of that defense would violate the mandamus order issued by the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") in *Northern States I*.  In *Nebraska Public Power*, the United States Court of Appeals for the Federal Circuit (the "Federal Circuit") recently confirmed that the D.C. Circuit had jurisdiction to issue that writ and that the writ must be given res judicata effect in this court.  Plaintiffs also contend that even if the defense is not prohibited by the writ, the Government cannot assert it because the defense was not timely raised and should be barred by laches.  The Government responds that it may assert the "unavoidable delays" defense as a "contractual defense" to damages and that the writ only prevents it from asserting the clause as a "statutory" defense.  Def.'s Resp. 6.  The Government argues that it did not waive the right to assert this defense and instead "telegraphed" its intention to do so to Plaintiffs throughout this litigation.  *Id.* at 10.

   A.   Interpretation and Effect of the *Northern States I* Writ of Mandamus and the Federal Circuit Decision in *Nebraska Public Power*

In *Northern States I*, the D.C. Circuit issued a writ of mandamus regulating conduct by the Government in future SNF cases.  Previously, in *Indiana Michigan Power Co. v. U.S. Dep't of Energy*, 88 F.3d 1272, 1276 (D.C. Cir. 1996), the D.C. Circuit had held that section 302(a)(5), 42 U.S.C.  § 10222(a)(5), of the NWPA imposed an unconditional obligation on DOE to accept SNF by the statutory deadline.  The court interpreted Section 302(a)(5)(B) of the statute, which states that "in return for the payment of fees . . . [DOE], beginning not later than January 31, 1998, will dispose of the [SNF]," as creating a duty to accept SNF that was not conditioned on the availability of a repository.  *Id.* at 1277.  Despite this decision, DOE advised the utilities that it would not begin accepting SNF by the 1998 deadline.  The utilities then returned to the D.C. Circuit and petitioned for a writ compelling DOE to begin acceptance.  *Northern States I*, 128 F.3d at 757.  DOE responded that the Contract provided the utilities with remedies in the event that DOE could not meet its duty and that the "unavoidable delays" clause did not obligate DOE to provide any financial remedy.  *Id.*  The court declined to issue a writ compelling acceptance, finding that "potentially adequate" remedies were available to the utilities under the Contract. *Id.* at 759.  Instead, the court issued a writ of mandamus "precluding DOE from excusing its own delay on the grounds that it has not yet prepared a permanent repository or interim storage facility."  *Id.* at 761.  The court elaborated: "Accordingly, we order DOE to proceed with contractual remedies in a manner consistent with the NWPA's command that it undertake an unconditional obligation to begin disposal of the SNF by January 31, 1998."  *Id.* at 760. Additionally, the court ordered "that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity.'"  *Id.* (quoting 10 C.F.R. § 961.11).

In response to the mandamus order, the Government contested the D.C. Circuit's authority to issue such a writ and asked for a clarification regarding the writ's scope.  The D.C. Circuit in addressing these questions reiterated that the mandamus order "barred the DOE from interpreting the Contract as imposing only a contingent disposal obligation."  *Northern States Power Co. v. U.S. Dep't of Energy*, No. 07-1065, 1998 WL 276581 at *1 (D.C. Cir. May 5,

1998) ("*Northern States II*").  In response to the challenge to its jurisdiction, the court concluded
that the writ was proper because it did not specifically address proper remedies for breach of the
Standard Contract: the writ did not "place the question of contract remedies in [the] court, nor set
up [the] court as a source of remedies outside the Standard Contract." *Id.* at *2.  The D.C.
Circuit explained the writ and its limits again in *Wisconsin Electric Power Co. v. U.S. Dep't of
Energy*, 211 F.3d 646 (D.C. Cir. 2000).  The utility in that case petitioned the court for a second
writ of mandamus compelling DOE to provide money damages and other relief for its breach.
The court denied the petition as beyond its jurisdiction.  *Id.* at 647-48.  It explained that the writ
in *Northern States I* was issued because the Government had presented an interpretation of the
Standard Contract that "did not render the Department liable for damages of any kind."  *Id.* at
647.  The writ forbids "the DOE from claiming, *in proceedings under its contracts*, that its
failure to perform was 'unavoidable' because a repository was not available."  *Id.* (emphasis
added).

        The Government again challenged the jurisdiction of the D.C. Circuit and the effect of
the *Northern States I* writ in the Court of Federal Claims in *Nebraska Public Power Dist. v.
United States*, 73 Fed. Cl. 650 (2006).  The trial judge concluded that the writ was void ab initio
on the grounds that the D.C. Circuit's order was not supported by a waiver of sovereign
immunity and intruded on this court's jurisdiction.  *Id.* at 673-74.  He ordered the parties to brief
the issue of "unavoidable delays," but also certified the matter for interlocutory review.  In an en
banc decision with two judges concurring and one in dissent, the Federal Circuit concluded that
the D.C. Circuit did have proper jurisdiction.  Plaintiffs here interpret the *Nebraska Public
Power* opinion as holding without equivocation that the writ was valid.  The majority stated the
issue as: "whether the D.C. Circuit's decisions in *Indiana Michigan* and *Northern States* are
entitled to res judicata effect in the proceedings before the Court of Federal Claims."  590 F.3d at
1363; *see also id.* at 1376 ("The question before us is whether the D.C. Circuit had jurisdiction to
decide that issue of statutory construction . . . .").  The court's holding did not offer any
interpretation of the writ itself: "In sum, the D.C. Circuit's decisions in the *Indiana Michigan* and
*Northern States* cases were not barred by sovereign immunity and should not have been denied
res judicata effect on that ground.  We therefore reverse the order . . . ." *Id.* at 1376.

        In the opinion, the Federal Circuit did provide some description of its reading of the
*Northern States I* writ.  The court concluded that the writ was "an order barring DOE from acting
in derogation of its statutory obligation" and the fact that the writ "could affect *subsequent
contract litigation* that in turn could result in an award of damages" did not make the writ itself
"an award of damages."  *Id.* at 1371 n.7 (emphasis added).  The court reiterated that when issued
"it was clear that the D.C. Circuit's remedial order would affect later litigation over contract-
based rights."  *Id.* at 1376.  The court further emphasized that "the order did not address any
issue of contract breach, direct the implementation of any remedy, or construe any contract
defense, *except to the extent that the proposed interpretation of the contract would conflict with
the statutory directive of section 302(a)(5).*"  *Id.* (emphasis added).[4]

---

[4] In its response, the Government quotes this text but carefully omits the patently relevant portion
of the passage highlighted above.  Def.'s Resp. 6.  Plaintiffs suggest in a footnote that the court
sanction counsel for the Government's truncated editing of this excerpt from the Federal
Circuit's decision.  Pls.' Reply 5 n.1 (citing *Precision Specialty Metals, Inc. v. United States*, 315

Plaintiffs assert that these statements in *Nebraska Public Power* demonstrate that the Federal Circuit made no distinction between using "unavoidable delays" as a defense against statutory liability as opposed to contractual damages when upholding the jurisdiction of the D.C. Circuit. The Government, however, argues that the court did make such a distinction and thus necessarily "clarified the scope" of the mandamus order. Def.'s Resp. 2. The Government cites the concurring opinion, written by Judge Dyk and joined by Judge Linn, as indicating that the writ bars the "unavoidable delays" defense *only* as it relates to liability. Judge Dyk wrote that he "read the majority opinion here as holding that as a matter of res judicata, the D.C. Circuit's statutory interpretation bars interpreting the Unavoidable Delays clause as creating a *defense to liability*." *Nebraska Public Power*, 590 F.3d at 1376-77 (Dyk, J., concurring) (emphasis added). He concluded that the decision left "open" the possibility the Government might argue "that the Unavoidable Delays clause bars a damage award (as opposed to some other contractual remedy such as restitution)." *Id.*

To date, only one case in this court has addressed the *Nebraska Public Power* opinion. In *Consolidated Edison Co. of New York, Inc. v. United States*, No. 03-2622C, 2010 WL 1980806 (Fed. Cl. May 5, 2010), this court focused specifically on awarding damages to the plaintiff utility company. In a footnote, the court addressed the Government's use of the "unavoidable delays" affirmative defense:

> Defendant asserted a further defense in this case based upon the 'unavoidable delays' clause of the Standard Contract, arguing that DOE's failure to collect spent nuclear fuel as required was attributable to excusable causes. Based upon the Federal Circuit's recent decision in *Nebraska Public Power Dist. v. United States*, 590 F.3d 1357 (Fed. Cir. 2010), the Court will not address the 'unavoidable delays' defense in this opinion.

*Id.* at *3 n.2. This brief statement does not address any difference between using "unavoidable delays" as a defense to damages or to liability and appears to interpret *Nebraska Public Power* as barring the use of "unavoidable delays" in either respect.

The Government contends that as there are two valid interpretations of the Federal Circuit decision, there is a disputed issue of law and therefore granting the motion to strike is inappropriate. The statements in the majority opinion in *Nebraska Public Power* and in the actual mandamus order, however, indicate that *any* use of the "unavoidable delays" clause as a defense would be a violation of the order. The Federal Circuit did not claim to be changing the

---

F.3d 1346, 1356 (Fed. Cir. 2003). To note that the Court is highly dismayed with Defendant's brief in this regard is an understatement. It flatly will not countenance any such misbehavior in the future. Because Defendant's brief does rely, however, on other, fully-quoted portions of the *Nebraska Public Power* opinion in support of its position on the question at hand, it will not construe this one instance of Defendant's inadequate citation to the opinion as an effort deliberately to mislead the Court and will not proceed with consideration of sanctions under Rule 11.

terms of the writ or creating a distinction not found in the original language. The majority opinion instead specifically stated that the order was not a determination of damages but was instead a bar on a specific interpretation of the Standard Contract that would affect "any contract defense . . . to the extent that *the proposed interpretation* of the contract would conflict with the statutory directive" of the NWPA. *Nebraska Public Power*, 590 F.3d at 1376 (emphasis added). As Plaintiffs correctly point out, the Federal Circuit claimed no authority to "clarify" or interpret the content of the writ. Although the concurrence reads the majority as finding a distinction in the writ between "unavoidable delays" as a defense to liability and as a defense to damages, the majority opinion does not specify any such distinction. Instead, it does explicitly recognize that the writ will affect "later litigation over contract-based rights," which presumably includes the determination of damages. *Id.*

The interpretation of the majority opinion presented by the concurrence is not binding on this court. *See Sparton Corp. v. United States*, 68 Fed. Cl. 34, 40 n.3 (2005) (language cited to the court was in a concurring opinion of a Federal Circuit judge, "which is not binding authority"); *Cane Tennessee, Inc. v. United States*, 62 Fed. Cl. 703, 713 (2004) ("concurring opinions have no legal effect, and thus, are in no way binding on any court") (quoting *Bronson v. Board of Ed. of School Dist. of City of Cincinnati*, 510 F. Supp. 1251, 1265 (S.D. Ohio 1980)) (internal quotation marks omitted). This court has chosen to follow analyses presented in concurring opinions of the Federal Circuit when the court finds that opinion persuasive. In *Masco Corp. v. United States*, 47 Fed. Cl. 449, 453-54 (2000), the court found a concurring opinion filed by Judge Rader to be "well-reasoned and persuasive" and chose to follow his method of analysis, although the court acknowledged that Judge Rader "was writing for himself" and his opinion was "not binding." In *Nebraska Public Power*, Judge Dyk's opinion, joined by Judge Linn, stated specifically that he was writing only for himself. *Nebraska Public Power*, 590 F.3d at 1376 ("I read the majority . . . .") (Dyk, J., concurring). This Court does not concur with Judge Dyk's reading. The concurrence provides no textual evidence for its interpretation of the majority opinion. The Government has not presented any convincing reason for this Court to adopt a reading of the *Nebraska Public Power* decision other than what is plainly stated in the majority opinion.

Additionally, it is unclear how a defense to damages relying on the "unavoidable delays" clause would be able to circumvent the very clear directive of the *Northern States I* mandamus order. The Government has offered no information on how it would present such a defense or any specifics about its arguments relating to the clause in the damages context. The writ broadly precludes the Government from excusing its own delay with the "unavoidable delays" clause: DOE cannot "implement *any interpretation* of the Standard Contract that excuses its failure to perform" based on the clause. *Northern States I*, 128 F.3d at 760 (emphasis added). The D.C. Circuit has twice clarified that the writ bars this entire interpretation, without making any distinction regarding the stage of the case in which that interpretation is argued. *See Wisc. Electric Power Co.*, 211 F.3d at 647 (the writ forbids "the DOE from claiming, in proceedings under its contracts, that its failure to perform was 'unavoidable'"); *Northern States II*, No. 07-1065, 1998 WL 276581 at *1 (the writ "barred the DOE from interpreting the Contract as imposing only a contingent disposal obligation"). It would make little sense for the Government to be able to argue that it should not have to pay damages (or should pay reduced damages) because of "unavoidable delays" in obtaining a repository or interim storage facility, thereby

using the clause as an excuse, when the writ forbids such an interpretation.  As the Federal Circuit noted, the D.C. Circuit issued the writ because it "concluded that it was necessary to bar DOE from doing under the rubric of contract interpretation what section 302(a)(5)(B) prohibited as a matter of statutory compulsion."  *Nebraska Public Power*, 590 F.3d at 1374.   Allowing the Government to use the clause to negate a damages award would be permitting what the D.C. Circuit has already prevented.

   B.  Waiver of the Defense and Laches

   In the alternative, Plaintiffs move to strike the Government's "unavoidable delays" defense on the bases of waiver and laches.  Plaintiffs' arguments in these respects are not compelling.  Plaintiffs first argue that the Government waived its right to "unavoidable delays" as a defense because it failed to formally assert the defense before briefing on summary judgment had been completed.  The Government responds that it properly pled the affirmative defense and filed its answer late because of other action in the case and in the Federal Circuit. RCFC 8(c) states that "a party must affirmatively state any avoidance or affirmative defense." An affirmative defense may be waived if not pled as prescribed, but the waiver is not effective absent unfair surprise or prejudice. *See Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962, 970 (Fed. Cir. 1999) (citing Federal Rule of Civil Procedure 8(c) which is identical to RCFC 8(c)); *Nw. La. Fish & Game Preserve Comm'n v. United States*, 79 Fed. Cl. 400, 409 n.8 (Fed. Cl. 2007); *First Annapolis Bancorp. Inc. v. United States*, 75 Fed. Cl. 280, 288 (Fed. Cl. 2007).  "The general rule is that affirmative defenses are waived when not pleaded in the answer."  *Stockton East Water Dist. v. United States*, 70 Fed. Cl. 515, 528 (2006) (citing *Crocker v. United States*, 127 F. Supp. 568, 573 (Ct. Cl. 1955)); *see also Todd v. United States*, 292 F.2d 841, 845 (Ct. Cl. 1961)).  In the instant case, the Government did plead the "unavoidable delays" defense in its answer, although that answer was not filed until February 24, 2009.  The question is then whether this delay would cause any unfair surprise or prejudice to Plaintiffs in responding to the defense.

   In SNF cases, this court has been hesitant to allow affirmative defenses to proceed once significant activity, such as a trial or discovery, has concluded because the plaintiffs would be unfairly prejudiced.  In *Wisconsin Electric Power Co. v. United States*, 90 Fed. Cl. 714, 799 (2009), the court concluded that the Government had waived the "unavoidable delays" defense because it did not raise the defense until after trial and did so in a footnote.  The court noted that summary judgment had been granted "long ago" and that the Government had never sought to amend its original answer to include the defense.  *Id.* at 799-800.  The court reasoned that it would be prejudicial to litigate the defense at such a "late date."  *Id.* at 801.  Similarly, in *Southern Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 453 (2007), the Government attempted to argue "unavoidable delays" as a defense to damages by asserting it in a footnote in a post-trial brief.  This court noted that the Government had not mentioned "unavoidable delays" in any of its responses and did not address the clause at trial.  *Id.* at 457.  Based on the stage of the litigation, the court concluded that the "[p]laintiffs would be seriously prejudiced if the record were reopened to litigate what is or was unavoidable. . . . ."  *Id.* at 458.   In *Energy Northwest v. United States*, 91 Fed. Cl. 531, 554 (2010), this Court held that the Government had waived its right to assert reimbursement as an affirmative defense because it failed to do so "at any time prior to trial, or even specifically at trial."  This Court reasoned that because the trial

had concluded and the plaintiff had had no opportunity to develop any arguments or testimony related to the defense, raising the defense would have "the effect of an unfair surprise."  *Id.*

Here, however, the only conclusive action was the grant of summary judgment on liability on February 26, 2009, which issued two days after the Government asserted the defense in its answer.  The Government argues that it made its intention to assert "unavoidable delays" very clear to Plaintiffs well before formally pleading the defense:  in its August 21, 2008, motion to coordinate discovery, the Government suggested that the then-pending *Nebraska Public Power* decision would allow it to raise the defense.  Def.'s Mot. to Coordinate Disc. 9-10.  The Government again referenced *Nebraska Public Power* in its December 9, 2008, response to Plaintiffs' motion for summary judgment, suggesting that the Federal Circuit's ruling would be "instructive" regarding the Government's ability to use the "unavoidable delays" clause.  Def.'s Resp. to Pls.' Mot. Summ. Judg, 6-7.   Plaintiffs, then, have been aware of the possible use of this affirmative defense since at least August 2008, several months before the Government filed its answer.  It does not therefore appear that the Government has delayed in such a way that would be prejudicial or an "unfair surprise" to Plaintiffs.

Plaintiffs additionally asserted in their reply in support of the motion that the Government should have argued that the writ did not bar the use of "unavoidable delays" defense against the assessment of damages much earlier and cannot do so now due to the doctrine of laches.[5]  To establish laches, "a party must show unreasonable or inexcusable delay from the time the claimant knew or reasonably should have known of its claim against the party, and that the delay caused either economic prejudice, or injury to the party's ability to mount a defense."  *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 568-69 (2004) (citing *A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (*en banc*)).   "No fixed boundaries define the length of time deemed unreasonable, and the duration should be viewed in light of the circumstances."  *Aero Union Corp. v. United States*, 47 Fed. Cl. 677, 686 (2000).  Plaintiffs argue that, "[u]nfortunately for the Government, the time period in which to act properly regarding the potential assertion of an 'Unavoidable Delays' defense passed well over a decade ago."  Pls.' Reply 8.  The *Northern States I* writ was issued in 1997; many SNF cases have been litigated in this court since that time.  Plaintiffs contend that "it is simply not equitable" to allow the Government to argue this distinction between a defense to liability and a defense to damages now, after over twenty SNF cases have already gone to trial.  *Id.*   Plaintiffs have not, however, demonstrated that the Government has acted unreasonably in its attempts (or lack thereof) to use "unavoidable delays."  The Government did repeatedly challenge the D.C. Circuit's authority to issue the writ in other SNF cases and that litigation resulted in the *Nebraska Public Power* decision.  The Government, and Plaintiffs for that matter, did not have the benefit of the Federal Circuit's decision until January 2010.  The Government has also not been so remiss in asserting the "unavoidable delays" clause as a defense to damages as Plaintiffs contend.  In at least five other SNF cases currently before the Court of Federal Claims, the Government has filed answers

---

[5] Plaintiffs have not formally pled laches but instead reference the doctrine only in their reply.  Pls.' Reply 9.  It is therefore unclear to the Court if Plaintiffs have raised, or even intended to formally argue, the issue of laches or are instead arguing more generally that the principles of equity should lead this Court to conclude that it cannot allow the Government to argue "unavoidable delays" at this time.

that contain similar language asserting "unavoidable delays" as an affirmative defense to liability and/or damages.[6]  Although Plaintiffs make a strong point that changing the SNF jurisprudence now - after cases have been decided without the "unavoidable delays" defense being litigated - would be disruptive, the Government is acting on a plausible interpretation of the Federal Circuit's very recent opinion and has not delayed so unreasonably as to have the defense barred by laches.


**IV.      Conclusion**

        For the reasons set forth above, Plaintiffs' motion to strike the first affirmative defense, "unavoidable delays," is GRANTED, and the first affirmative defense is stricken from Defendant's answer.


                                        s/ Edward J. Damich
                                        EDWARD J. DAMICH
                                        Judge

---

[6] *See Sacramento Municipal Utility Dist. v. United States*, No. 09-587C (answer filed on November 3, 2009); *Power Authority v. United States*, No. 00-703C (answer filed on February 24, 2009); *Alabama Power Co. v. United States*, No. 08-237C (answer filed on November 17, 2008).  Additionally, in *System Fuels Inc. v. United States*, No. 03-2624C (answer filed January 30, 2007) and in the *Nebraska Public Power* case in this court, No. 01-116C (Def.'s Answer to Am. Compl., filed May 20, 2010), the Government has asserted "unavoidable delays" only as a limitation to plaintiffs' damages.