# In the United States Court of Federal Claims

No. 03-2627 C
(Filed: May 13, 2011)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **ENTERGY NUCLEAR FITZPATRICK, LLC ,** | * |
| **ENTERGY NUCLEAR INDIAN POINT 3, LLC,** | * |
| **and ENTERGY NUCLEAR OPERATIONS, INC.,** | * |
|  | * |
| Plaintiffs, | * |
|  | * |
| v. | * |
|  | * |
| **THE UNITED STATES,** | * |
|  | * |
| Defendant. | * |
|  | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

On January 28, 2011, Defendant filed a motion for partial summary judgment "on the rate at which Defendant the United States (the 'Government'), acting through the U.S. Department of Energy ('DOE'), was required to accept spent nuclear fuel ('SNF') from plaintiff utilities under the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ('Standard Contract')."  In its motion, Plaintiff argues that the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), via its decision in *Pacific Gas & Elec. Co. v. United States*, 536 F.3d 1282 (Fed. Cir. 2008) ("*PG&E*"), established "as a matter of law that DOE was obligated to accept SNF from utilities at annual aggregate rates set forth in the 1987 Annual Capacity Report ("1987 ACR") and the 1987 Office of Civilian Radioactive Waste Management ("OCRWM") Mission Plan Amendment ("Mission Plan Amendment" or "MPA").

Accordingly, Plaintiff asks this Court to adjudicate issues of causation and the calculation of damages in this action based on the rates of the 1987 ACR and Mission Plan Amendment.

For the reasons stated below, the Court GRANTS Plaintiff's motion for partially summary judgment on the acceptance rate.

I.    *Standard of Review*

Summary judgment "is appropriate if the movant can show both the absence of genuine issues of material fact and entitlement to judgment as a matter of law." *Wellman, Inc. v. Eastman Chemical Co.*, -- F.3d -- , 2011 WL 1601994 at *4 (Fed. Cir. 2011).

II.     *Discussion*

A.   1987 ACR

In *PG&E*, the Federal Circuit reviewed the process under the Standard Contract whereby DOE was to issue annual capacity reports (ACRs) beginning not later than July of 1987.  "These reports set forth projected annual receiving capacity for DOE facilities and annual acceptance rankings, including projected capacity information for the first ten years of operations for the [SNF] repository."  536 F.3d at 1285-86.  The court referred to the entire process of ACRs, acceptance priority rankings (APRs), and delivery commitment schedules (DSCs) as "the acceptance capacity schedule or ACS process."  *Id*. at 1286.  The reason for its extensive review of the ACS process was that the "damages analysis" for DOE's partial breach of the Standard Contract "requires some minimum acceptance rate."  *Id*. at 1289.  "[W]ithout an acceptance rate, the contract would be meaningless and nonsensical . . .."  *Id*.  It held that "[t]he acceptance rate is thus an essential term of the contract."  *Id*.

Determining which ACS to use was deemed the "salient question."  *Id*. at 1290.  The court determined that "[t]he 1987 ACR process therefore provides the best available pre-breach snapshot of both parties' intentions for an acceptance rate," *id*. at 1292, because that was when "both parties still anticipated timely and full performance of the contract."  *Id*. at 1291.  Accordingly, it held that the 1987 report "presents the most reasonable measure of the contractual acceptance rate."  *Id*. at 1292.

Defendant does not dispute that in *PG&E* the Federal Circuit "defined the rate of acceptance of spent nuclear fuel and high-level radioactive waste ('SNF/HLW') required under the Standard Contract through 2007."  Def.'s Response at 1.[1]  It opposes Plaintiff's request for summary judgment on the rate through 2007, however, as "an unnecessary advisory opinion on a matter of unambiguous appellate precedent."  Because, as Plaintiff points out, the parties are nevertheless engaged in a concrete dispute as genuinely adverse litigants, the Court finds it more than merely "advisory" to grant Plaintiff's motion in this respect.

B.   1987 Mission Plan Amendment

Plaintiff's motion additionally requests summary judgment in favor of the acceptance rates identified in the 1987 Mission Plan Amendment, which sets forth rates through the year 2038.[2]  Plaintiff acknowledges, however, that because NYPA's damages include its costs through September 30, 2009, "only the rates through 2009 are necessary for adjudication of this issue in this case."  Pl.'s Reply at 3 n.1.  Even so, Defendant argues that "neither the Standard Contract, the 1987 ACR, or the 1987 Mission Plan imposed upon DOE any rate-related obligations beyond 2007."  More specifically, it explains that the 1987 Mission Plan Amendment merely set out "aspirational rates" beyond 2007 and that the *PG&E* decision "did not hold otherwise."  The rates of acceptance for 2008 and 2009, it argues therefore, are genuine issues of material fact and inappropriate for summary judgment.  Resp. at 4-5.

---

[1] Table 2.1 of the 1987 ACR itemized the "Waste Acceptance Schedule" for the first 10 years, 1998 through 2007, of the commencement of DOE SNF acceptance.

[2]  Table F-1 of the MPA reflects acceptance only of SNF during the first 10 years; it reflects acceptance of HLW as well beginning in 2008.

In *Energy Northwest v. United States*, 91 Fed. Cl. 531, 549 n.16 (2010), reversed on other grounds, No. 2010-5112, 2011 WL 1312306 (Fed. Cir. Apr. 7, 2011), this Court, however, has already endorsed the proposition that the 1987 ACR process incorporates both the 1987 ACR and the 1987 MPA. The 1987 ACR references the MPA in several instances. For example, in the 1987 ACR Summary, it states, "The system configuration used as the basis for this report is defined in the Mission Plan Amendment." In Section 2.0, "Projected Waste Acceptance Capacity," it states, "The waste acceptance schedule in this ACR is consistent with the schedule from the Mission Plan Amendment." Table 2.1, specifying the receipt rate for SNF in MTUs (metric tons of uranium) for the years 1998 through 2007, notes that the data was extracted from Appendix F, Table F-1, of the MPA. As such, the 1987 ACR is inextricably linked with the 1987 MPA as part of the ACR "process" endorsed by the Federal Circuit in *PG&E*. This linkage is consistent with the *PG&E* court's endorsement of the 1987 ACR as a "snapshot" of the parties' intent when the parties were still contemplating timely and full performance of the contract.

C. GTCC Waste

A more complicating matter is Defendant's opposition to Plaintiff's motion as it applies to the issue of DOE's acceptance of Greater-Than-Class-C ("GTCC") waste. In *Yankee Atomic Electric Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008), a companion case to *PG&E*, the Federal Circuit held that GTCC counted as high level waste ("HLW") and was thus part of DOE's contractual acceptance obligation. Although the first 10 years of waste acceptance as specified in the 1987 ACR, Table 2.1, did not include HLW, the court determined that, had DOE begun timely performance in 1998, it would have accepted the Yankee plaintiffs' GTCC waste "with the SNF." 536 F.3d at 1278.

Defendant argues, therefore, that "[a]dding previously unaccounted for material to the waste acceptance queue would necessarily extend the queue, delaying the acceptance of materials previously scheduled for removal in accordance with how many materials were added as a consequence of *Yankee Atomic*." Resp. at 6. Plaintiff maintains, however, that the 1987 ACR and MPA "contemplated separate HLW and SNF acceptance queues." Reply at 4.

The Federal Circuit's decisions in *PG&E* and in *Yankee Atomic* appear to be in conflict with respect to the timetable for acceptance of GTCC waste. At the very least, in *PG&E*, the Federal Circuit endorsed the acceptance rates found in Table 2.1 of the 1987 ACR. Table 2.1 includes a footnoted clarification that "[t]he waste acceptance schedule for HLW is not included since the Mission Plan Amendment does not specify acceptance of HLW during the 10-year period covered by this report." Table 2.1 also specifically cites as the source for those rates Appendix F, Table F-1, of the "OCRWM Mission Plan Amendment." These comments strongly suggest that GTCC waste would not have been accepted prior to 2008.[3] GTCC waste therefore would not have contributed to "extending" the SNF queue at least until that 11th year of acceptance (and even then, not at all, if, as Plaintiff maintains, the 1987 ACR and MPA "contemplated separate HLW and SNF acceptance queues.").[4]

[3] The court in *Boston Edison Co. v. United States*, 93 Fed. Cl. 105, 117 (2010) was even more emphatic in this conclusion: "The 1987 annual capacity report ('ACR') explicitly states that HLW (of which GTCC waste is a part) would not be accepted prior to 2008."

[4] Plaintiff also suggests that GTCC generated by all the nuclear utilities "would have had no effect on the pick-up rates even if GTCC were factored into the SNF queue." Reply at 5 (citing, e.g., *S. Cal. Edison Co. v. United States*, 93 Fed. Cl. 337, 354 (2010)).

Table F-1 of the MPA is consistent with that view, showing SNF-only acceptance for the first 10 years of DOE performance at specific yearly quantities, with HLW acceptance in specific additional quantities beginning in 2008.  Yet the Federal Circuit in *Yankee Atomic* found that "the record shows that the Government planned to (and would have) removed the GTCC with the SNF."  536 F.3d at 1278.  The court affirmed the trial court's findings "that conclusions reached with respect to recoverability of SNF storage expenses are equally applicable to GTCC waste."  *Id.* at 1279.  The trial court based its opinion on record evidence of damages incurred only through 2001 for two of the Yankee plaintiffs and through 2002 for the third Yankee plaintiff.  This was, obviously, well within the 10-year period in which the 1987 ACR acceptance rates, as endorsed in *PG&E*, indicate there was to be no HLW pick-up.

This Court holds that, pursuant to the 1987 ACR, DOE's obligation for the period 1998 through 2007 was to accept SNF only and at the acceptance rates specified.  Under the 1987 MPA, the acceptance of HLW, in addition to SNF, was not an obligation of the Government until 2008 and was to begin in that year at the rates specified therein specifically for HLW.  The determination by the Federal Circuit in *Yankee Atomic* that the Government would have picked up GTCC "with the SNF" can only be explained as a finding specific to the facts of that case ("The parties' intentions and actions, as revealed by these documents and numerous others in the record, provide firm footing for the trial court's conclusion that 'it is very unlikely that DOE would remove all SNF without also taking plaintiffs' GTCC waste.'"  536 F.3d at 1278).

III.    Conclusion

Plaintiff here is making no claim for damages for GTCC waste acceptance.  There are no genuine issues of material fact and Plaintiff is entitled to summary judgment based on the acceptance rates set forth in the 1987 ACR and the acceptance rates through 2009 set forth in the 1987 MPA.  Plaintiff's motion is hereby GRANTED.


                                        s/ Edward J. Damich
                                        EDWARD J. DAMICH
                                        Judge