# In the United States Court of Federal Claims

No. 03-2627 C
(Filed under seal: July 15, 2011;
Released for publication: July 21, 2011)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
                                                              \*
**ENTERGY NUCLEAR FITZPATRICK, LLC,**                         \*
**ENTERGY NUCLEAR INDIAN POINT 3, LLC,** and                  \*
**ENTERGY NUCLEAR OPERATIONS, INC.**                          \*
                                                              \*
          Plaintiffs,   \*
                                                              \*
  v.                                                  \*
                                                              \*
**THE UNITED STATES,**                                        \*
                                                              \*
          Defendant.    \*
                                                              \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION

In this spent nuclear fuel ("SNF") case, Plaintiffs Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Indian Point 3, LLC, and Entergy Nuclear Operations, Inc. (collectively "Entergy") have moved for partial summary judgment denying the Government's proposed offset or reduction in damages for cask loading costs. Plaintiffs' Motion for Partial Summary Judgment On Defendant's Proposed Cask Loading Offset ("Pls.' Mot.") at 1.

Under the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983), which each of the nation's nuclear utilities reached with the Department of Energy ("DOE"), the utilities accepted responsibility for loading SNF (and/or high-level radioactive waste ("HLW")) into casks provided by DOE for transportation to a Government storage facility. In return for the payment of certain fees, the Government agreed to accept, transport, and store the nuclear waste. The Government is in partial breach of the contract because it has not yet begun acceptance of any SNF.[1] In this motion, Plaintiff seeks a determination that the Government may not offset any damages Entergy may receive (in the underlying action for partial breach) by the amount of cask-loading costs that Defendant alleges Entergy has avoided as a consequence of the Government's breach.

---

[1] *See Dairyland Power Cooperative v. United States*, 2011 WL 2519519 (Fed. Cir. June 24, 2011) at \*1 for background concerning the Department of Energy's ("DOE's") "breach of its obligation to accept spent nuclear fuel from the nation's nuclear power utilities."

For the reasons set forth below, the Court GRANTS Plaintiffs' motion for partial summary judgment on the cask loading offset.

## I. BACKGROUND

In November 2000, Entergy purchased the James A. FitzPatrick ("FitzPatrick") and Indian Point 3 ("IP3") nuclear stations in the communities of Scriba, New York, and Buchanan, New York, respectively, from the Power Authority of the State of New York ("NYPA"). First Am. Compl. and Supp. Compl. at 2. As part of the agreement, NYPA assigned its contract to Entergy. *Id.* Entergy seeks damages, for the period since its acquisition of Fitzpatrick and IP3, for the costs incurred, inter alia, of procuring additional SNF storage capacity. It has incurred expenses at Fitzpatrick in the course of loading SNF from wet pool storage into canisters[2] for dry fuel storage in its Independent Spent Fuel Storage Installation ("ISFSI"). *Id.* at 11. At IP3, it has incurred expenses in preparation for dry fuel storage at the Indian Point ISFSI. *Id.*

Defendant argues, however, that "the cost of loading casks of SNF/HLW from wet storage in the non-breach world would have significantly exceeded the costs to load from dry storage in the future at Fitzpatrick and Indian Point 3." Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment on Defendant's Proposed Cask Loading Reduction ("Def.'s Resp.") at 2. Defendant's experts have quantified the amount of Entergy's "avoided" costs for cask loading at $6,009,398. Pls.' Mot, App. 12.

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit;" a dispute is genuine if the evidence is such that a reasonable trier of fact could find for the nonmoving party. *Id.* at 248. The party moving for summary judgment may prevail by demonstrating the absence of any genuine issues of material fact or by showing the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of material fact. *Id.* at 324. Any inferences that may be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). Similarly, "[i]n cases in which there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984).

---

[2] Fitzpatrick is using and IP3 expects to use a Holtec International, Inc. ("Holtec") canister-based dry storage system. Plaintiffs' Proposed Findings of Uncontroverted Fact, ¶ 1.

## III.     DISCUSSION

One of the principal purposes of contract damages is to place the wronged party in as good a position as it would have been if the contract had not been breached. *Bluebonnet Sav. Bank, F.S.B. v. United States*, 339 F.3d 1341, 1344-45 (Fed. Cir. 2003). The corollary, as Defendant notes, is that "the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach." *Id*. at 1345. Defendant argues, therefore, that "a court must subtract from any breach-related costs those sums that plaintiff avoided as a consequence of the breach." Def.'s Resp. at 3 (citing *So. Nuclear Operating Co. v. United States*, 637 F.3d 1297, 1304 (Fed. Cir. 2011)).

The question, however, in the context of cask loading costs, is whether the costs are avoided or merely deferred. In *Carolina Power & Light Co. v. United States*, 573 F.3d 1271 (Fed. Cir. 2009), the court specifically addressed the government's argument that the trial court had not accounted for costs the plaintiff had allegedly avoided in not having had to load DOE transportation casks:

> This court rejects the argument that Progress Energy has avoided the costs of loading casks such that the government should benefit from an offset in the damages award. Plaintiffs have not avoided the costs of loading. Rather, they have merely deferred these costs.

*Id*. at 1277.

The court noted that the parties in these SNF partial breach cases retained their substantive rights and obligations under the contract. Accordingly, allowing the government an offset against current damages when the utility was still obligated to load the SNF whenever DOE arrives to pick up spent fuel in the future "would effectively require utilities to pay loading costs twice." *Id*.

Defendant attempts to distinguish its proposed offset in this case from the outcome in *Carolina Power*, arguing that the appellate court affirmed the trial court under a "clear error" standard and thus indicating "that cask loading is an issue of fact, to be decided on a case-by-case basis." Def.'s Resp. at 2. At the trial level, the court's principal holding was that the plaintiff's cask loading costs were merely deferred, not avoided. *Carolina Power & Light Co. v. United States*, 82 Fed. Cl. 23, 52 (2008). In addition, it noted that, even if the plaintiff's loading costs were considered avoided, rather than deferred, costs, the Government had "failed to present any evidence showing with reasonable certainty" what the loading costs would have been had DOE performed. *Id*.

By contrast, Defendant argues that here the record is significantly different, in that the Government's technical and accounting experts have "developed a reasonably certain depiction of non-breach world loading" and have quantified the cost of that work. Thus, it avers, the Government here has presented evidence demonstrating "that the cost of loading casks of SNF/HLW from wet storage in the non-breach world would have significantly exceeded the costs to load from dry storage in the future at Fitzpatrick and Indian Point 3." Def.'s Resp. at 2.

In order to sustain such a conclusion, Defendant must in effect show[3] *both* the hypothetical past cost of cask loading that Plaintiff would have incurred in the non-breach world as well as the loading cost "when DOE arrives to pick up" spent fuel in the hypothetical future. *Carolina Power & Light*, 573 F.3d at 1277.

As related by Defendant, its technical expert, Mr. Joseph Grillo, estimated the parameters of the cask that DOE would have used to accept and transport SNF in the 1998 time period when DOE was first obligated to begin taking utilities' SNF and included within his analysis the range of casks available for potential use at that time. He included the cask system that in fact was utilized at Fitzpatrick to place its spent fuel in dry storage at its ISFSI. He assessed fuel characteristics and license requirements for the various cask types; he estimated the cask size that DOE would have used; he took into consideration breach versus non-breach world loading procedures, operations, and labor costs; and he considered the deposition testimony of NYPA's Rule 30(b)(6) witness, finding it comported with his own conclusions. According to Defendant, "through this exacting methodology, Mr. Grillo established a reasonable depiction of non-breach world cask loading to DOE had it timely performed." Defendant's accounting expert, Mr. Robert Peterson, then quantified these non-breach world cask loading costs.

Were these steps the only factors in determining whether Plaintiff has avoided, rather than deferred, its cask loading cost obligation, the court would undoubtedly conclude that such matters were questions of fact better left for determination at trial.

Where Defendant's argument ultimately founders is the comparison of alleged non-breach world cask loading costs (i.e., had DOE not breached in the past) with the loading costs that Entergy will still incur in the future, a step inherent to any determination whether Entergy has avoided these expenses or merely deferred them. As Plaintiffs argue in reply, "[t]he Government impermissibly seeks to offset Entergy's claim based on speculation as to future events." Pls.' Reply at 1.

In the SNF cases where the issue of cask loading costs has come before the Court of Federal Claims, the Government's proposed offsets have uniformly been rejected. In *Tennessee Valley Authority v. United States*, for example, the court held:

> [A]ny benefit inhering in [the utility] because of delayed loading costs would be entirely speculative. It is not possible to ascertain the method DOE will ultimately use for SNF acceptance. The size and type of casks to be used to transport the SNF are not known; no casks have been approved for the purpose. The mode of

---

[3] The parties disagree as to who bears the burden of proof. *Compare So. Nuclear Operating Co. v. United States*, 637 F.3d 1297, 1304 (Fed. Cir. 2011) (plaintiffs "bear the burden of persuasion" with respect to both claimed costs and avoided costs for storage of nuclear waste) with *Energy Northwest v. United States*, 641 F.3d 1300, 1306 (Fed. Cir. 2011) ("*Carolina Power* addresses the separate circumstances where a *breaching party* seeks to offset an award by *proving* that the non-breaching party has achieved some cost savings because the breach permitted it to avoid – not just defer – some aspect of performance.") (emphases added). Because the Federal Circuit in *Energy Northwest* was specifically addressing the burden of proof in the cask loading context at issue in *Carolina Power*, this court finds that its analysis governs as to the burden of proof in the context similarly at issue here.

> transport has not been determined. Additionally, the date at which
> DOE will begin to perform in the future cannot even be estimated,
> let alone determined with reasonable certainty.

69 Fed. Cl. 515, 542 (Fed. Cl. 2006).

In a similar conclusion, in *Pac. Gas & Elec. Co. v. United States*, the court described as "a guessing game" the inquiry whether deferred cask loading costs "will have increased or decreased by the time (if ever) defendant performs the parties' Standard Contract." 73 Fed. Cl. 333, 415-16 (2006), *aff'd in part & rev'd in part on other grounds*, 536 F.3d 1282 (Fed. Cir. 2008).

It is evident here that Defendant's expert, Mr. Grillo, has no basis other than speculation for his belief that, when DOE arrives in the future to pick up Plaintiffs' spent fuel, it will utilize casks compatible with the canisters in which Fitzpatrick has now stored its SNF at its ISFSI (and that IP3 contemplates using). Pls.' Mot. at 3 (citing Grillo Dep. at 414-419, Sept. 22, 2010). As Plaintiffs note, "it is no less speculative that DOE will *not* use" such compatible casks. *Id*. at 7. "In that event, Entergy will need to incur the costs of loading its Holtec canisters and reloading its SNF into DOE's chosen cask when DOE actually begins performance." *Id*. This Court agrees with Plaintiffs' characterization of Mr. Grillo's testimony as pure speculation. As the court noted in *Entergy Nuclear Vermont Yankee (ENVY)*,

> The central tenet of the Government's argument is that these are
> one-time costs incurred in connection with ENVY's performance
> of the Standard Contract that will not be incurred again when DOE
> collects the spent nuclear fuel. Although DOE relies upon the
> premise that these expenses will not be incurred again in the future,
> DOE is unable to provide any guarantees. It is entirely possible
> that these efforts will need to be repeated in the future if ENVY is
> required to unload the fuel assemblies from the Holtec casks and
> re-load them into DOE-provided casks. Since it is unclear what
> additional processes, if any, will be required when DOE performs,
> Defendant should bear the burden of this uncertainty, not ENVY.

*Entergy Nuclear Vermont Yankee, LLC v. United States*, 95 Fed. Cl. 160, 191 (2010), appeal pending, Nos. 2011-5033 et al. (Fed. Cir.).

The Federal Circuit favorably noted "the underlying logic" in respect to cask loading: that a court ought "not draw premature conclusions about what the utilities' future loading costs might or might not be." *Energy Northwest*, 641 F.3d at 1306. "*Carolina Power* properly urges caution when speculating about the future in a case of partial breach – usually, the proper approach is to wait for those events to actually occur, and to resist premature conclusions." *Id*. at 1306-07.

Defendant argues that its proposed offset is warranted because otherwise Entergy would be placed in a better position than if there had been no breach. Def.'s Resp. at 6. The costs of its

loading SNF from dry storage in the future, it alleges, are significantly exceeded by the costs it would have borne under the contract of loading from the SNF wet pools. The problem, however, is that proof of the future costs are so speculative as to be inherently unworthy of credence at this time.

Summary judgment is granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Here, the necessary inquiry, as the Supreme Court has described it, is "whether the evidence presents a sufficient disagreement to require submission to a jury [or to the trial judge, in lieu of a jury, in actions before the United States Court of Federal Claims] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). This Court finds that Defendant can muster no set of facts with sufficient reliability to demonstrate the costs of Entergy's cask loading responsibility in the indistinct future when DOE may arrive to accept Entergy's SNF. *See also Consumers Energy Co. v. United States*, No. 02-1894 C, slip op. at 7-8 (Fed. Cl. Jan. 11, 2011).

## IV.   CONCLUSION

For the reasons stated above, the Court hereby GRANTS Plaintiffs' motion for partial summary judgment on Defendant's proposed cask loading offset.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge
