# In the United States Court of Federal Claims

No. 03-2627 C
(Filed: November 3, 2011)

**************************************************

| | |
|---|---|
| ENTERGY NUCLEAR FITZPATRICK, LLC, | * |
| ENTERGY NUCLEAR INDIAN POINT 3, LLC, | * |
| and ENTERGY NUCLEAR OPERATIONS, INC., | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

* Spent Nuclear Fuel; Motion
* to Reconsider Order to
* Strike Affirmative Defense;
* Unavoidable Delays Clause;
* Standard Contract; *Northern*
* *States I*; Writ of Mandamus;
* D.C. Circuit; *Nebraska*
* *Public Power District*;
* *Southern Nuclear Operating*
* *Co.*; Liability for Breach
* Compared to Liability for
* Damages; Certification for
* Interlocutory Appeal

**************************************************

*Alex D. Tomaszczuk*, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, counsel of record for Plaintiffs; of counsel were *Jay E. Silberg*, *Daniel S. Herzfeld*, *Jack Y. Chu*, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C., and *L. Jager Smith, Jr.,* Wise Carter Child & Caraway, P.A., Jackson, MS.

*Scott D. Slater*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant; of counsel, *Jane K. Taylor*, Office of General Counsel, United States Department of Energy, Washington, D.C., *Marian E. Sullivan*, Senior Trial Counsel, *Joseph E. Ashman*, *Lisa L. Donahue*, *Joseph D. Keller*, *Michelle R. Milberg*, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

---

## OPINION AND ORDER

---

**DAMICH**, **Judge**

At issue is Defendant's motion for reconsideration of this Court's August 3, 2010, Order, striking Defendant's Unavoidable Delays defense. *Entergy Nuclear FitzPatrick, LLC v. United States*, 93 Fed. Cl. 739 (2010). Based on a writ of mandamus issued by the United States Court of Appeals for the D.C. Circuit in *Northern States Power Co. v. Dep't of Energy*, 128 Fed. Cl. 754

(D.C. Cir. 1997) ("*Northern States I*"), which the United States Court of Appeals for the Federal Circuit has held was within the D.C. Circuit's jurisdiction to issue and therefore entitled to preclusive effect in proceedings before the Court of Federal Claims, *Nebraska Public Power Dist. v. United States*, 590 F.3d 1357, 1359, 1363 (Fed. Cir. 2010) (en banc) ("*Nebraska Public Power*" or "*NPPD*"), this Court granted Plaintiff's motion to strike.

The Government's motion to reconsider is based on the more recent decision of the Federal Circuit in *Southern Nuclear Operating. Co. v. United States*, 637 F.3d 1297 (Fed. Cir. 2011) ("*Southern Nuclear*"), which Defendant avers "unequivocally" holds that the *Northern States I* writ of mandamus "does not bar" assertion of the unavoidable delays defense in the Court of Federal Claims.

In supplemental briefing requested by the court, the Government has clarified that "the United States does not propose to use the unavoidable delays defense as a get-out-of-jail-free card" respecting liability, but rather as a means to "circumscribe[] the amount of expectation damages." Def.'s Suppl. Br. at 4, 5. Specifically, the Government argues that costs incurred by Plaintiffs due to one particular source of delay – Nevada's efforts to prevent licensing of a repository – are covered by the clause. "[P]laintiffs' recovery should be reduced only by the amount that plaintiff would have expended had the United States accepted SNF on a schedule delayed only by the length of time attributable to Nevada's dilatory conduct." *Id.* at 6. More specifically, the Government asserts, "the *unavoidable* delays that DOE has encountered as a result of the [sic] Nevada's conduct would have delayed the commencement of SNF acceptance by at least 31 months, or from January 30, 1998 through at least August 2000." *Id.* at 7 (emphasis in original). Thus, it argues that Plaintiffs' damages for SNF storage due to the Government's delay in performance "did not commence until September 2000 – the earliest that performance could have begun given the Unavoidable Delays that DOE encountered." *Id.*

For the reasons set forth below, Defendant's motion for reconsideration is DENIED.

## I.     Background

The procedural history of this case is discussed in greater detail in *Entergy Nuclear Fitzpatrick*, 93 Fed. Cl. at 740-742. In 1983, Congress enacted the Nuclear Waste Policy Act ("NWPA") in order to provide a safe, secure, and permanent disposal facility for spent nuclear fuel ("SNF") and other radioactive by-products of the operation of nuclear power plants. *See* 42 U.S.C. §§ 10101-10270 (2006). Accordingly, the NWPA authorized the Department of Energy ("DOE") to contract with utilities and other producers of nuclear waste to collect and store their SNF. *See* 42 U.S.C. § 10222(a)(1). However, the producers of SNF were to bear responsibility for the costs of disposal. *See* 42 U.S.C. § 10131(a)(4). Pursuant to this authorization, DOE drafted and issued a contract for use in negotiations with utilities, termed the Standard Contract. 10 C.F.R. § 961.11. In accordance with section 302(a)(5)(B) of the NWPA, the Standard Contract provided that DOE would accept and dispose of commercially-generated SNF beginning no later than January 31, 1998, and that, in return, utilities would pay fees to cover the costs of removal. *Id.*[1]

---

[1] For a detailed history of the NWPA, the Standard Contract, and SNF cases in the federal courts, *see Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337-40 (Fed. Cir. 2000); *Indiana Michigan Power Co. v. U.S.*

In 1983, Power Authority of the State of New York ("NYPA"), the original owner of the James A. FitzPatrick Nuclear Power Station and the Indian Point 3 Nuclear Power Station, entered into a Standard Contract with DOE for the removal of SNF from both plants.  The plants were sold in November 2000 to Entergy Nuclear FitzPatrick, LLC and Entergy Nuclear Indian Point 3, LLC, respectively.  After the purchase, DOE was notified by letter that the Standard Contract had been assigned to Entergy Nuclear Operations, Inc. as agent for the new plant owners, Entergy Nuclear FitzPatrick and Entergy Nuclear Indian Point 3.

In 1994, DOE noted in the Federal Register its projection that the "earliest possible date for acceptance of waste for disposal at a repository is 2010."  59 Fed. Reg. 27,007, 27,008 (May 25, 1994). In 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues concluding that it did not have an unconditional obligation under the NWPA or the Standard Contract to accept SNF by January 31, 1998, in the absence of a repository or interim storage facility by that date.  60 Fed. Reg. 21,793, 21,794-95 (May 3, 1995).

A number of utilities, states, and state agencies subsequently filed a petition in the United States Court of Appeals for the District of Columbia Circuit for review of DOE's Final Interpretation, pursuant to 42 U.S.C. § 10139.  The D.C. Circuit concluded that "section 302(a)(5)(B) creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998."  *Ind. Mich. Power Co.*, 88 F.3d at 1277.  Notwithstanding that ruling, DOE subsequently advised the utilities that it would not begin accepting nuclear waste by the 1998 statutory deadline.  The utilities returned to the D.C. Circuit seeking a writ of mandamus to compel DOE to comply with its statutory obligation to begin SNF acceptance on time.  While that action was pending, DOE asserted that, under the Unavoidable Delays clause in Article IX of the Standard Contract,[2] it was not obligated to provide a financial remedy for the delay in accepting the nuclear waste.  *See Northern States I*, 128 F.3d at 757.

The D.C. Circuit denied the utilities' request for a writ requiring DOE to begin accepting nuclear waste as of the statutory deadline.  *Id*. at 756.  The appellate court, however, rejected

_____

*Dep't of Energy*, 88 F.3d 1272, 1273-74 (D.C. Cir. 1996); *Dairyland Power Coop. v. United States*, 90 Fed. Cl. 615, 618-21 (2009).

[2]  The "unavoidable delays" clause is set forth in the Standard Contract at "Article IX – Delays, 1. A. Unavoidable Delays by Purchaser or DOE":

> Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligation hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform.  In the event circumstances beyond the reasonable control of the Purchaser or DOE – such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather – cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

10 C.F.R. § 961.1, Art. IX.A.

DOE's argument that it was not obligated to accept nuclear waste because its failure to do so was "unavoidable" within the meaning of the Unavoidable Delays clause. *Id.* at 757. Accordingly, the D.C. Circuit held that NWPA "imposes an unconditional obligation" to begin accepting nuclear waste by January 31, 1998, and issued a writ of mandamus "precluding DOE from excusing its own delay on the grounds that it has not yet prepared a permanent repository or interim storage facility." *Id.* at 761. The D.C. Circuit ordered DOE "to proceed with contractual remedies in a manner consistent with NWPA's command that it undertake an unconditional obligation to begin disposal of the SNF by January 31, 1998." *Id.* at 760. The court specifically precluded DOE "from concluding that its delay [was] unavoidable." *Id.*

Despite the provisions of the NWPA and the Standard Contract, DOE did not begin accepting nuclear waste by January 31, 1998 (nor has it accepted any SNF to date from any utility), even though it has continued to collect payments from the nuclear utilities for SNF disposal. More than sixty nuclear utilities eventually filed suits in the Court of Federal Claims for damages for partial breach of contract.

In 2005, at oral argument in a suit filed by Nebraska Public Power District, the Government noted its continued interest in raising a defense based on the Unavoidable Delays clause, but believed it was precluded from doing so by the writ of mandamus issued in *Northern States I* by the D.C. Circuit. *Nebraska Public Power Dist. v. United States*, 73 Fed. Cl. 650, 655-56 (2006). The trial court ordered briefing on the question of the authority of the D.C. Circuit to issue the writ. The trial court concluded that, "in issuing the subject mandamus, the D.C. Circuit operated in excess of its jurisdiction and, specifically, without an appropriate waiver of sovereign immunity." *Id.* at 673. Accordingly, the court held that the D.C. Circuit's judgment in *Indiana Michigan* was void and therefore the writ issued in *Northern States I*, predicated on the *Indiana Michigan* judgment, was also void. *Id.*

The Federal Circuit took up the issue on interlocutory appeal. In an en banc decision, the Federal Circuit reversed the trial court and held that the D.C. Circuit had jurisdiction to issue its writ of mandamus and that the writ must be given *res judicata* effect in this Court. *Nebraska Public Power*, 590 F.3d at 1359, 1363. Specifically, the Federal Circuit held that the D.C. Circuit had jurisdiction to review the utilities' statutory claim arising under section 302 of the NWPA. Therefore, according to the Federal Circuit, the D.C. Circuit was authorized to prohibit the Government from using contract interpretation as a means of avoiding its statutory obligations under Section 302. *Id.* at 1365. "Beyond that implementation of its statutory ruling, the D.C. Circuit properly left all issues of contract breach, enforcement, and remedy to be determined in the litigation before the Court of Federal Claims." *Id.* However, the Federal Circuit made clear that, although the D.C. Circuit's writ was not itself "an award of damages," *id.* at 1371 n.7, the relief granted "could affect subsequent contract litigation that in turn could result in an award for damages." *Id.* Accordingly, the Federal Circuit concluded that the D.C. Circuit's "order did not address any issue of contract breach, direct the implementation of any remedy, or construe any contract defense, except to the extent that the proposed interpretation of the contract would conflict with the statutory directive in section 302(a)(5)." *Id.* at 1376.

Given the Federal Circuit's en banc decision in *Nebraska Public Power*, this Court granted Plaintiff's motion to strike Defendant's unavoidable delays defense in *Entergy Nuclear FitzPatrick, LLC v. United States*, 93 Fed. Cl. at 740.

## II.      Defendant's Motion for Reconsideration

The instant motion before the Court stems from the Federal Circuit's recent decision in *Southern Nuclear*. Def.'s Mot. for Reconsideration at 1. In *Southern Nuclear*, a Federal Circuit panel affirmed a decision by the Court of Federal Claims that held that the Government had waived its unavoidable delays defense by not having raised it at trial. *Southern Nuclear*, 637 F.3d at 1298. The Government argued that it reasonably believed that it was compelled by the *Northern States I* mandamus order, under threat of sanctions of contempt, from raising the unavoidable delays defense and, therefore, could not have voluntarily or knowingly waived the defense at trial. *See id*. at 1305. However, the panel rejected the Government's argument and observed:

> In our en banc decision in *Nebraska Public Power*, we did not suggest that the District of Columbia Circuit's decision in any way foreclosed arguing in favor of the defense in the Claims Court. Indeed, we considered the government's argument and held that the District of Columbia Circuit had jurisdiction to enter the mandamus order and that its decision in *Northern States* was entitled to res judicata effect on the issue of liability but that it did not "direct the implementation of any remedy."

*Id*. at 1306 (internal citation omitted).

As noted, Defendant argues that the Federal Circuit "unequivocally" held the writ of mandamus issued against DOE by the D.C. Circuit in *Northern States I* does not bar the Government from asserting the unavoidable delays defense in the Court of Federal Claims. Plaintiffs rejoin that there has been no change in controlling law since the Federal Circuit's en banc decision in *Nebraska Public Power*. Specifically, Plaintiffs argue that the Government is relying on *dicta* in the *Southern Nuclear* decision and that the panel decision in *Southern Nuclear* cannot modify or contradict the en banc decision in *Nebraska Public Power*.

## III.      Standard of Review

Pursuant to Rule 59(a)(1) of the Rules of the Court of Federal Claims ("RCFC"), a party may file a motion to reconsider a prior decision by the Court. RCFC 59(a)(1). The decision to grant the motion rests within the sound discretion of the Court. *See Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). The Court must exercise extreme care in deciding such a motion. *A.A.B. Joint Venture v. United States*, 77 Fed. Cl. 702, 704 (2007). "The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake of fact." *Id.* Specifically, "[t]he motion must have one of the following bases: (1) an intervening change in controlling law has occurred; (2) previously unavailable evidence is now available; or (3)

reconsideration is necessary to prevent manifest injustice." *Id.* The Court will deny a motion for reconsideration if a party uses it "merely as an opportunity to re-litigate issues already decided by the court." *Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812, 814 (2000).

## IV.   Discussion

Here, Defendant challenges not the validity of the D.C. Circuit's mandamus order, but this Court's interpretation of the scope of that order based on its analysis of *Nebraska Public Power*.  Thus, it is not that there has been an intervening change in controlling law since this Court first granted Plaintiff's motion to strike Defendant's unavoidable delays defense, but rather that, according to Defendant, the limited boundaries of both the mandamus order and the Federal Circuit's affirmance of its validity have now been more brightly limned by the panel's decision in *Southern Nuclear*.  "*Southern Nuclear* clarifies that the Government has never violated the D.C. Circuit's mandamus order by asserting the unavoidable delays defense – nor has it run afoul of the Federal Circuit's holding in *NPPD*."  Def.'s Mot. at 5.

The inquiry, then, is to determine the precise holding of *Southern Nuclear* and to examine whether it counsels a reading of the en banc decision in *Nebraska Public Power* that upends the basis for this Court's striking of the unavoidable delays defense.

A.   *Southern Nuclear* Implicitly Held that the Government Could Have Raised the Unavoidable Delays Defense, Despite the D.C. Circuit's Mandamus

In *Southern Nuclear*, the Federal Circuit affirmed the trial court's holding that the Government had waived any defense based on the Unavoidable Delays clause.  The trial court had noted that the Government had not raised its interest in the unavoidable delays defense except in its post-trial brief.  *Southern Nuclear Operating Co. v. U.S.*, 77 Fed. Cl. 396, 453 (2007).  The trial court also observed that the Government's questions regarding the validity or applicability of the D.C. Circuit's mandamus could have been raised in advance of trial but had not been, even though the Government had by that time already argued, at the trial level in *Nebraska Public Power*, that the D.C. Circuit lacked jurisdiction for its mandamus.  *Id.* at 456.  Finding that the plaintiffs would be "seriously prejudiced if the record were reopened to litigate what is or was unavoidable," the lower court held that "in this case defendant has waived any defense of the unavoidable delays clause as well as the validity [of] the writ of mandamus" in *Northern States I*.  *Id.* at 458.

Plaintiffs here characterize the Federal Circuit panel decision in *Southern Nuclear* as "holding that the Government waived use of the Unavoidable Delays clause by failing to raise it until after the conclusion of discovery and trial."  Pls.' Resp. at 8.  Anything more, they argue, is at best *dicta*. *Id.* at 2.  After specifically holding that the Government had waived its proposed defense, the Federal Circuit panel then stated, somewhat ambiguously, "We need not reach the question posed by the *Nebraska Public Power* concurrence as to whether the 'unavoidable delays' clause could provide a defense to expectancy damages."  *Southern Nuclear*, 637 F.3d at 1306.  Plaintiff reads that statement as confirming Plaintiff's argument that the decision's discussion of the availability of the defense or not was dicta. *Accord Portland General Elec. Co. v. United States*, No. 04-09 C, 2011 WL 3796290, Fed. Cl., August 26, 2011, at *6 n.5.

6

This Court finds, however, that the actual holding of the Federal Circuit decision is more expansive than Plaintiffs contend.  The panel held, "Because the government failed to raise the unavoidable delays clause here and *because this failure was not compelled by the District of Columbia Circuit's mandamus in Northern States*, it has waived the defense."  *Southern Nuclear*, 637 F.3d at 1306 (emphasis added).  Implicit in the panel's holding is that the unavoidable delays defense could have been raised despite the mandamus (but it wasn't, so therefore it was waived).

The panel explained why it believed the defense could have been raised.[3]  "The government misreads the scope and purpose of the *Northern States* order.  The order did not foreclose the government from making arguments in the Claims Court."  *Id*. at 1305.  The panel further explained, "In our en banc decision in *Nebraska Public Power*, we did not suggest that the District of Columbia Circuit's decisions in any way foreclosed arguing in favor of the defense in the Claims Court."  *Id*. at 1306.

B.  The Decision in *Southern Nuclear* Tracks the Concurrence in *Nebraska Public Power*

The panel's implicit holding that the unavoidable delays defense could have been raised, and its commentary on *Northern States I* and *Nebraska Public Power*, certainly track the position of the concurrence in *Nebraska Public Power*.  There, two judges of the en banc majority, Judges Timothy B. Dyk and Richard Linn, joined in a concurrence in order to address what they termed "the dissent's overreading of the majority opinion."  *Nebraska Public Power*, 590 F.3d at 1376.

To better understand the concurrence, inasmuch as it was written to rebut the dissent, it is helpful thus to review the argument of the dissent.  The dissenting judge, Judge Arthur J. Gajarsa, had complained that the majority had overreached in affirming the validity of the mandamus order.  The order was "unquestionably directed to and aimed at the contract dispute," which the dissent argued should more properly have been lodged under the Tucker Act as a damages action at the Court of Federal Claims and thus beyond the D.C. Circuit's statutory jurisdiction, rather than directed solely at agency action under the NWPA.  *Id*. at 1381.  The dissent expressed that the majority's effort to "parse[]" the jurisdictional issue by noting that the order "did not address any issue of contract breach, direct the implementation of any remedy, or construe any contract defense," *id*. at 1376, was ineffectual.  "Notwithstanding its cleverly worded interstitial attempt in limiting the interpretation of liability by the D.C. Circuit, the majority cannot avoid the obvious legal conclusion that this affects the damages imposed upon the United States."  *Id*. at 1381.  The dissent characterized the majority decision as attempting "to maintain comity with the D.C. Circuit by distinguishing between liability qua breach and liability qua damages," *id*. at 1383, but it questioned the functionality of that distinction precisely because the Unavoidable Delays clause "is directed to 'liab[ility] for damages.'"  *Id*.

In short, the dissent said that the D.C. Circuit improperly leveraged its authority to construe the statute to restrict the Government's effort to raise a contractual defense, which should have been left to the Court of Federal Claims.  The mandamus order was effectively

---

[3]  Thus, where the panel wrote that it "need not reach the question whether" the clause "could" provide a defense, it meant not that the defense could not be raised but that, because the defense had been waived, the panel was not confronted with determining whether such a defense would be effective.

imposing both liability for breach of contract – because DOE had not begun SNF acceptance by the statutorily set date of January 31, 1998 (which was also set out in the Standard Contract) – and for damages, because any distinction between the two was "not intellectually defensible." *Id*. at 1383. "Specifically, the question of breach is every bit as much within the exclusive jurisdiction of the Court of Federal Claims as is the question of damages." *Id*. The D.C. Circuit "by its writ thus obligated DOE to pay compensatory damages in a subsequent breach of contract action." *Id*. at 1384.

The two concurring judges wrote to express their view that neither the D.C. Circuit nor the Federal Circuit majority went as far "as ordering the government to pay money damages (expectancy damages) for breach of the agreement." *Id*. at 1377 (footnote omitted). "Although I read the majority as establishing government liability, it remains open for the government to argue that the Unavoidable Delays clause bars a damages award (as opposed to some other contractual remedy such as restitution)." *Id*. "[T]he D.C. Circuit has no jurisdiction to determine questions concerning damages remedies." *Id*. Thus, the distinction between barring use of the Unavoidable Delays clause as a defense to liability for breach but not as a defense to liability for damages, which the dissent said inhered in the majority decision but which it found "intellectually indefensible," was explicitly noted in the concurrence as "open for the government to argue."

Thus, even before the panel decision in *Southern Nuclear*, the concurrence in *Nebraska Public Power* had already expressed the view that the D.C. Circuit's mandamus nevertheless allows the Government to raise the Unavoidable Delays clause, at least as a defense to expectancy damages.[4]

C.    *Nebraska Public Power*, However, Affirmed the Bar on Unavoidable Delays as a Defense to Liability for Damages

The Government's motion in favor of reconsideration based on *Southern Nuclear* thus raises no new argumentation in favor of allowing its proposed unavoidable delays defense (and to a certain extent is seeking a second bite at the apple in re-litigating issues already decided). In ruling on Plaintiffs' motion to strike the defense in the first place, this Court weighed these same arguments regarding the limitations of the *Northern States I* mandamus and the affirmance of its validity in *Nebraska Public Power*. The Government's brief in opposition to the motion to strike had plainly noted the concurrence's view that the Unavoidable Delays clause remained available as a defense to damages. Nevertheless, this Court noted that the majority decision acknowledged that the writ "could affect subsequent contract litigation that in turn could result in an award of damages," *id*. at 1371 n.7, and that "the D.C. Circuit's remedial order would affect later litigation over contract-based rights." *Id*. at 1376. This Court further recognized as significant the majority's observation that "the order did not address any issue of contract breach, direct the implementation of any remedy, or construe any contract defense, *except to the extent that the proposed interpretation of the contract would conflict with the statutory directive of section*

---

[4]  It bears noting that the two judges in concurrence in *Nebraska Public Power* comprised two of the three judges of the *Southern Nuclear* panel. The third member of the panel, Judge Alvin A. Schall, who joined to make its decision unanimous, was also a member of the majority in *Nebraska Public Power*, although he did not join in the concurrence there.

*302(a)(5)." Id.* (emphasis added by this Court). Thus, the applicability of the mandamus to liability for damages was an issue squarely joined and evident in the interlocutory appeal of *Nebraska Public Power* at the Federal Circuit.

The "statutory directive of section 302(a)(5)" at the heart of the mandamus was the "unconditional" obligation to begin SNF acceptance by the January 1998 date. "Accordingly," the D.C. Circuit wrote in *Northern States I*, "we order DOE to proceed with contractual remedies in a manner consistent with NWPA's command that it undertake an unconditional obligation to begin disposal of the SNF by January 31, 1998." *Northern States I*, 128 F.3d at 760. The D.C. Circuit was explicitly reining in DOE's efforts to escape responsibility for "*costs* resulting from its failure to perform." *Id.* (emphasis added). Similarly, it observed, "Reaching the preliminary conclusion that the delay was unavoidable, the Department's Contracting Officer let DOE off the hook for *monetary damages*." *Id.* (emphasis added). The D.C. Circuit elaborated, "DOE cannot now render its obligation contingent, and free itself of the *costs caused by its delay*, by advancing the same failed position that we rejected before [in *Indiana Michigan*]." *Id.* (emphasis added). The "failed position" to which the court referred was DOE's argument that it did not have an obligation to take SNF without an operational repository or other storage facility. Thus, in *Northern States I*, the D.C. Circuit reaffirmed that the Government's obligation was "unconditional" and that it could not use the lack of a repository or alternative storage as a defense under the Unavoidable Delays clause to escape responsibility for the costs incurred by its failure to commence performance on time. Clearly, the reach of the mandamus extended to costs, i.e., damages, as well as to liability.

The majority decision in *Nebraska Public Power* was clearly sensitive to the limited reach of the D.C. Circuit's mandamus. The Federal Circuit noted the D.C. Circuit's point that the nuclear utilities' ability to enforce the Standard Contract would be "'frustrated'" by a construction of the contract "'inconsistent with'" the conclusion that DOE's statutory obligation to begin performance in January 1998 was "'without qualification or condition.'" *Nebraska Public Power*, 590 F.3d at 1362 (quoting *Northern States I*, 128 F.3d at 759). The mandamus was therefore not void, as the trial court had held. The D.C. Circuit was within its authority to go that far, but not "beyond that." *Id.* at 1365.

In this respect, both the dissent and the concurrence misread the majority opinion in *Nebraska Public Power*. The dissent discerned an attempted distinction in the majority opinion between "liability qua breach and liability qua damages," but found it "ineffectual" such there would effectively be no boundary at all to the reach of the mandamus "precisely and explicitly to the issue of 'remedies' for a breach." *Id.* at 1381. This court finds, however, that the majority in *Nebraska Public Power* did not in effect open the barn door to the D.C. Circuit's wholesale jurisdiction over contractual remedies, but rather drew a specific and effective line, i.e., that the mandamus precludes the Government's reliance on the Unavoidable Delays clause to excuse the failure of performance by January 31, 1998. On that point at least, the dissent is in agreement. "Additionally, the D.C. Circuit's writ of mandamus prohibits the DOE from construing the Unavoidable Delays clause to excuse its failure to dispose of SNF by January 31, 1998." *Id.* at 1382. The concurrence, on the other hand, also found in the majority opinion a distinction between liability and damages, but found it appropriate. "Although I read the majority as

establishing government liability, it remains open for the government to argue that the Unavoidable Delays clause bars a damages award . . . ." *Id.* at 1377.

This view by the concurrence does not comport with the exception the majority plainly drew: "The [mandamus] order did not address any issue of contract breach, direct the implementation of any remedy, or construe any contract defense, except to the extent that the proposed interpretation of the contract would conflict with" the unconditional performance start date of January 31, 1998. *Id.* at 1376.  In acknowledging the aforementioned exception, "except to the extent that . . .," and affirming the mandamus, the Federal Circuit majority in *Nebraska Public Power* – plainly, in this Court's reading – foreclosed the Government's use of the Unavoidable Delays clause not merely as a defense to liability but as a defense to damages for failing to meet its unconditional obligation.[5]  The majority recognized that the D.C. Circuit's intent was "to bar DOE from doing under the rubric of contract interpretation what section 302(a)(5)(B) prohibited as a matter of statutory compulsion." *Id.* at 1372.  "*Beyond that*," as the Federal Circuit repeated, the utilities were directed to seek relief before the Court of Federal Claims.  *Id.* (emphasis added).

The majority decision in *Nebraska Public Power* made no distinction between the start of liability, which was incurred when DOE failed to meet its unconditional obligation to begin SNF acceptance by January 1998, and a later date of liability for damages due to the Unavoidable Delays clause.  It would be illogical to do so.  If performance is excused under that clause until August or September 2000, then there is no basis for determining liability for partial breach of contract at the Standard Contract performance date of January 1998.  Yet, the Federal Circuit has squarely assigned the partial breach to have begun at the earlier date.  *Maine Yankee Atomic Power Co. v. United States*, 226 F.3d 1336, 1341-42 (Fed. Cir. 2000).

As the court in *Portland General Elec. Co.* has observed,

> Here it is undisputed that breach occurred on January 31, 1998 . . . .  We are unable to hypothesize a scenario that there is breach on that date, but no damages accrue because performance is excused.  The two concepts are mutually exclusive; if damages do not accrue, it is because performance is excused, i.e., there is no breach.

*Portland General Elec. Co.*, 2011 WL 3796290 at * 6.

Based on the foregoing, this Court adheres to its earlier conclusion, contrary to the concurrence in *Nebraska Public Power* and to the implicit holding in *Southern Nuclear*, that "[a]llowing the Government to use the [Unavoidable Delays] clause to negate a damages award would be permitting what the D.C. Circuit has already prevented," *Entergy Nuclear Fitzpatrick*, 93 Fed. Cl. at 746.  The question remaining, therefore, is whether the panel decision in *Southern*

---

[5]  Thus, even the issue of contract breach, in addition to the prohibition against utilizing the defense of the Unavoidable Delays clause, is encompassed in the "except to the extent that" language in the ultimate clause of this sentence.

*Nuclear* can be reconciled with the en banc decision in *Nebraska Public Power* and, if not, the extent to which this Court is bound by the decision in *Southern Nuclear*.

### D. *Southern Nuclear* Cannot Override *Nebraska Public Power*

In view of this court's analysis of the majority decision in *Nebraska Public Power*, the panel decision in *Southern Nuclear* can only be reconciled with the en banc decision by reading the panel decision extremely narrowly.[6] Yet it is evident that the panel in *Southern Nuclear* did implicitly hold that the unavoidable delays defense could have been raised, i.e., as a defense to expectancy damages as distinct from liability. The panel clearly construed *Nebraska Public Power* as extending the res judicata effect of *Northern States I* only to the issue of liability, but not to "the implementation of any remedy," that is, to damages. *Southern Nuclear*, 637 F.3d at 1306, quoting *Nebraska Public Power*, 590 F.3d at 1376. This court finds the two decisions to be at odds.

The Federal Circuit has adopted the rule that prior decisions of the Federal Circuit are binding precedent on subsequent panels unless overruled by the Federal Circuit en banc, or by other controlling authority such as an intervening statutory change or a decision by the United States Supreme Court. *See, e.g.*, *Lumbermens Mutual Casualty Co. v. United States*, 654 F.3d 1305, 1313 (Fed. Cir. 2011); *Arkansas Game & Fish Comm'n v. United States*, 637 F.3d 1366, 1375 (Fed. Cir. 2011); *Grapevine Imports, Ltd. v. United States*, 636 F.3d 1368, 1375 (Fed. Cir. 2011); *El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346, 1352 (Fed. Cir. 2004); *George E. Warren Corp. v. United States*, 341 F.3d 1348, 1351 (Fed. Cir. 2003) ("[T]o overrule a precedent, the court must rule en banc."); *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1372 (Fed. Cir. 2000); *Texas Am. Oil Corp. v. Dep't of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) ("This court applies the rule that earlier decisions prevail unless overruled by the court *en banc*, or by other controlling authority such as intervening statutory change or Supreme Court decision.") (en banc); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*."); *S. Corp. v. United States*, 690 F.2d 1368, 1370 n.2 (Fed. Cir. 1982) ("If conflict appears among precedents, in any field of law, it may be resolved by the court in banc in an appropriate case.").

There is thus no question that this Court is required to follow the precedent of the Federal Circuit. *See, e.g.*, *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006). Here, this Court is in the unenviable position wherein it finds that a panel decision of its appellate body contradicts an earlier decision of that same court, a decision that moreover was rendered en banc. The difficulty is not made easier by the fact that the members of the later panel were all members of the majority in the en banc decision.

---

[6] The court in *Portland General Elec. Co.* found the *Southern Nuclear* decision "not to the contrary," because of the panel's statement that it "need not reach the question" of the availability of the Unavoidable Delays defense. *Portland General Elec. Co.*, 2011 WL 3796290 at *6 n.5.

In sum, however, this Court's analysis convinces it that the Federal Circuit in *Nebraska Public Power* ratified the effect of the mandamus barring use of the Unavoidable Delays clause as a defense to damages.[7]   The D.C. Circuit's mandamus was intended to frustrate the Government's effort "to free itself of the costs caused by its delay" in meeting its unconditional statutory and contractual obligation to begin SNF acceptance by the January 1998 deadline. *Northern States I*, 128 F.3d at 760.   "*Beyond that implementation of its statutory ruling,*" the Federal Circuit ruled in *Nebraska Public Power*, the D.C. Circuit properly left the remaining issues of contract breach, enforcement, and remedy to the Court of Federal Claims.   *Nebraska Public Power*, 590 F.3d at 1365 (emphasis added).   Accordingly, as between the two decisions, this Court must find that *Nebraska Public Power* is the controlling precedent of the Federal Circuit.[8]

This court also finds convincing the arguments of Plaintiffs that the "delays" addressed in Article IX of the Standard Contract are those "that routinely may arise during the performance of the contract.   For them to arise, however, the parties must have begun performance . . . ."   *Maine Yankee Atomic Power Co. v. United State*s, 225 F.3d 1336, 1341 (Fed. Cir. 2000).   While the Federal Circuit in *Maine Yankee* was specifically addressing the "avoidable" delays clause, its point regarding "delays" as arising after the start of performance is equally applicable to the Unavoidable Delays clause.   Indeed, in *Northern States II*, issued the same day and by the same panel as *Maine Yankee*, the Federal Circuit stated, "We hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998."   *Northern States Power Co. v. United States*, 224 F.3d 1361, 1367 (Fed. Cir. 2000) ("*Northern States II*").   As the court in *Portland General Elec. Co*. thus concluded, based on *Maine Yankee* and *Northern States II*, "total non-performance cannot be characterized as a 'delay.'"

For the reasons stated above, Defendant's Motion for Reconsideration is DENIED.

## V.   Certification for Interlocutory Appeal

The question whether the Government may raise the Unavoidable Delays clause as a defense to damages, as opposed to liability, is a wrinkle in what, prior to the *Southern Nuclear* opinion, had been generally seen as resolved by the Federal Circuit in *Nebraska Public Power*. The en banc decision in *Nebraska Public Power* itself stemmed from the interlocutory appeal of a trial court decision that had held void the mandamus issued by the D.C. Circuit in *Northern States I*.   For many of the same reasons that the trial court decision in *Nebraska Public Power* was certified for interlocutory appeal, 74 Fed. Cl. 762 (2006), compounded by the inability of this court to reconcile the *Southern Nuclear* and *Nebraska Public Power* decisions, this court finds warranted the certification for appeal of the decision here, pursuant to 28 U.S.C. § 1292(d)(2).

---

[7]   *See Portland General Elec. Co.*, 2011 WL 3796290 at * ("Defendant's affirmative defense of unavoidable delays is proscribed as a matter of law"); *but see Rochester Gas and Elec. Corp. v. United States*, 99 Fed. Cl. 369 (2011).

[8]   *See, e.g., Arra Energy Co. v. United States*, 97 Fed. Cl. 12, 26 n.8 (2011).

Because this opinion involves a controlling question of law with respect to which there is a substantial ground for difference of opinion, and an immediate appeal from this order would materially advance the ultimate termination of the litigation, the court certifies the issue to the United States Court of Appeals for the Federal Circuit for its consideration whether to permit an appeal to be taken from this order should a timely application be made to that court.

This case is hereby stayed pending further order of the court.  If no application for consideration of this decision is made to the Federal Circuit within the requisite time period, the court will remove the stay and issue an order for a Joint Status Report on how the parties propose to proceed.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge