# In the United States Court of Federal Claims

No. 03-2627C
(Filed: March 17, 2016)
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ENTERGY NUCLEAR FITZPATRICK, LLC,
ENTERGY NUCLEAR INDIAN POINT 3, LLC,
and ENTERGY NUCLEAR OPERATIONS, INC.,

                *Plaintiffs*,

v.

THE UNITED STATES,

                *Defendant.*

Spent Nuclear Fuel;
Reconsideration;
RCFC 52(b); RCFC
59; Damages;
Causation

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER

On January 8, 2016, pursuant to Rules 52(b) and 59 of this court's rules ("RCFC"), plaintiffs filed a motion for reconsideration of our bench ruling, which was confirmed in a written order for judgment on December 15, 2015. We held that the United States is liable for its breach of the Standard Contract for Disposal of Spent Nuclear Fuel and entered final judgment for plaintiffs in the amount of $80,876,013. As part of that decision, we denied plaintiffs' claim for the security costs for manning two additional Bullet Resistant Enclosures ("BREs") at Indian Point Energy Center Unit 3 ("Indian Point 3"). The motion for reconsideration is fully briefed, and oral argument was held on March 1, 2016.

In our bench ruling, we found that the estimated security costs at Indian Point 3 were not recoverable:

> A. In principal, once again, I can accept the idea that having two more BREs to man should lead to higher staffing costs, but plaintiffs' calculation of additional costs based on full-time equivalents did not establish an incremental increase in actual security staffing and thus actual costs incurred due to the breach. It was simply assumed; B. There was no evidence of either an

uptick in security staffing when the two addition BREs went online or evidence of actual 24/7 staffing of those posts; C. The testimony of Mr. Gagnon that this lack of an uptick in staffing was due to the natural ebb and flow of security staffing at such a large facility does not explain the lack of proof, and plaintiffs have not claimed lost opportunity costs. The claim fails for lack of proof.

*Entergy Nuclear Fitzpatrick, LLC v. United States*, 2015 U.S. Claims LEXIS 1649, *9 (Fed. Cl. Dec. 15, 2015).

In their motion for reconsideration, plaintiffs argue that we applied the wrong legal standard in considering their claim for the additional security expenses at Indian Point 3. Specifically, plaintiffs contend that whether the security staffing costs were incremental over costs absent the breach is not the relevant legal inquiry for determining the recoverability of internal labor costs that were deployed to mitigate the government's breach. Rather, the correct standard is whether plaintiffs were deprived of the ability to use those personnel who were undeniably required to staff the BREs in lieu of performing other activities. As the Federal Circuit expressed in *Energy Northwest v. United States*, 641 F.3d 1300 (Fed. Cir. 2011), recovery of mitigation expenses should not turn on whether internal or external labor is used to perform the mitigation task or whether the labor is incremental or not; the appropriate test is simply whether "the awarded costs were actually caused by the breach." *Id.* at 1309. Plaintiffs also argue that the testimony of the security manager of Indian Point 3, Mr. Gagnon, is sufficient evidence of actual 24/7 staffing of two additional BREs.

"The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Pacific Gas & Elec. Co. v. United States*, 114 Fed. Cl. 146, 149 (Fed. Cl. 2013) (quoting *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990)). RCFC 52(b) provides that "[o]n a party's motion . . . the court may amend its findings" and RCFC 59(a)(1) provides that "[a] . . . reconsideration may be granted . . . for any of the reasons established by the rules of common law." *Pacific Gas & Elec. Co. v. United States*, 74 Fed. Cl. 779 (Fed. Cl. 2006). "The three primary grounds that justify reconsideration are: '(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or

2

prevent manifest injustice.'" *Delaware Valley Floral Group. Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (Fed. Cir. 2010) (quoting *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 642 F. Supp. 2d 1344, 1353 (S.D. Fla. 2009)). Such a motion is not an opportunity, however, for a disappointed litigant to reargue its case. *See Cane Tenn., Inc. v. United States*, 62 Fed. Cl. 703, 705 (2004).

Our evaluation of the claim left room for either of two means of proof: direct evidence of labor costs actually expended in association with manning the BREs, irrespective of whether it added to the total amount of labor expended on security ("evidence of actual 24/7 staffing of those posts"), or indirect proof of actual labor expended, which could be inferred in part from an overall increase in labor costs or staffing.

The problem for plaintiffs was that they had no direct proof of costs associated with manning the two new BREs. Such records were destroyed.[1] What plaintiffs had to resort to was indirect proof, which was, of course, permissible. Plaintiffs' logic chain went something like this: two additional BREs were built because of the need to provide additional security for the new dry storage facility; Mr. Gagnon testified that those posts needed to be manned 24/7; he provided excerpts from post assignments after June 5, 2011, indicating that guards were scheduled for those posts; Mr. Gagnon then estimated how many *additional* guards would have been required to man those posts (ten or more); and Mr. Metcalf estimated how much their salaries would have been, based on a median of security staff salaries, less an estimate as to wasted time. In other words, plaintiffs cobbled together a number of estimates as indirect proof of what it actually cost to staff the additional BREs. They chose to complete their proof with the contention that the guards were *in addition to* existing staffing.

What troubled the court at trial, in addition to the inherent imprecision of the estimates of time and wages, was that the assertion of additional staff was merely an assumption, and one which turned out to be counter to the

---

[1] A litigation hold was not placed until 2014, and Entergy had a three year document retention policy for such records. Thus no staff records exist prior to three years before the hold went in to effect.

actual evidence.  The documentary evidence showed no increase in staffing after the BREs went on line.  The conclusion that plaintiffs wanted to use as support for their proof that they actually incurred costs was at odds with the evidence.  This prompted the comment in the bench ruling that "the plaintiffs' calculation of additional costs based on full-time equivalents did not establish an incremental increase in actual security staff, and thus, actual costs incurred.  It was simply assumed." Tr. 13 (Oct. 28, 2015).  Consequently, in the absence of direct evidence of costs associated with the additional BREs, whether or not incremental to overall costs, what the court was looking for was proof of an overall increase in manning costs, because that was what the plaintiffs asserted happened.  If there had been such evidence, the court might have accepted the indirect proof in order to establish both a causal link between the breach and costs associated with the new BREs and as a means of itemizing those costs.[2]

Although counsel for plaintiffs suggested at oral argument that what they were seeking with respect to the two new BREs amounted to a claim for lost opportunity costs, we think the record is clear that plaintiffs' only claim at trial was for the incremental increase in direct labor charges associated with manning the two additional security posts.[3]  Their witnesses repeatedly contended that the costs for staffing the BREs were in addition to pre-breach staffing costs.  Plaintiffs' position throughout was that the overall effort increased.  On that argument, the proof failed; the alternative explanation was never attempted.[4]

---

[2]The calculation of those costs using the proffered method of estimation may not have been reasonably certain, but we did not reach that issue in our ruling because we found the claim failed for lack of proof of causation.

[3]In their pretrial brief, for example, plaintiffs have a category "4. Additional Security Costs," which they explain in the text as the "increased security cost to protect the Indian Point ISFSI.  The portion of the additional security costs allocated to Indian Point 3 totals approximately $2,539,000." Pls.' Pretrial Contentions of Fact and Law 18.

[4]That is not to say that a claim for lost opportunity would have been successful.  It likely would have failed for the same reason: lack of proof of actual costs.

This case is unlike *Sacramento Municipal Utility District v. United States*, 293 Fed. Appx. 766 (Fed. Cir. 2008), where the Federal Circuit reversed the trial court's decision denying certain breach-related internal labor expenses. The utility in that case presented evidence "detailing the percentage of hours each [] employee charged to [the] 'dual-purpose' dry storage project relative to the total hours that each employee worked for [the plaintiff]." *Id.* at 773. The trial court required the utility to also have put on evidence of what it would have done with those employees absent the breach. The circuit rejected that additional requirement and held that plaintiff needed only to prove that it used "its own employees in its mitigation efforts, and the number of hours those employees spent on mitigation related projects." *Id.* The plaintiff utilized a number of work orders against which it charged hours for the dry storage project, i.e., it had actual evidence of costs incurred. 70 Fed. Cl. 332, 366 (2006); *see also Wis. Elec. Power Co. v. United States*, 90 Fed. Cl. 714, 788 (2009) (we found that plaintiff met its burden of establishing internal labor costs to a reasonable certainty because those costs were subject to lay and expert testimony at trial and were adequately supported by books and records, such as "time sheets reviewed and signed off by a supervisor," internal accounting and payroll records); *Sys. Fuels, Inc. v. United States,* 79 Fed. Cl. 37, 66-67 (2007) (awarding internal labor costs because they were supported by contemporaneous records of hours expended on breach-related activities).

Plaintiffs argue that Mr. Gagnon's testimony is sufficient evidence of actual 24/7 staffing at the two additional BREs, but that is simply a disagreement with our weighing of the evidence and not a reason to grant a motion for reconsideration. When the courts have awarded internal labor costs, they have done so based on a record containing actual evidence of the hours worked, not *post hoc* estimates created solely for trial. Because there is no apparent or obvious error of law or a mistake of fact, we deny plaintiffs' motion for reconsideration.

                                                           s/Eric G. Bruggink
                                                           ERIC G. BRUGGINK
                                                           Judge